FILED

SEP 01 2006

HAROLD S. MARENUS, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. EW-05-1379-MaHK |
| LEONARD R. GREGER, | Bk. No. 04-04741 |
|                Debtor. | Adv. No. 04-00221 |
| LEONARD R. GREGER, | |
|                Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| FORREST HOLLIDAY, | |
|                Appellee. | |

Argued by Telephone Conference
and Submitted on June 22, 2006

Filed - September 1, 2006

Appeal from the United States Bankruptcy Court
for the Eastern District of Washington

Honorable Patricia C. Williams, Chief Bankruptcy Judge, Presiding

Before: Marlar, Hollowell[2] and Klein, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of <u>res judicata</u>, including issue and claim preclusion. <u>See</u> 9th Cir. BAP Rule 8013-1.

[2] Hon. Eileen W. Hollowell, United States Bankruptcy Judge for the District of Arizona, sitting by designation.

-1-

04-00221-PCW    Doc 41    Filed 09/01/06    Entered 09/14/06 14:24:15    Pg 1 of 18

## INTRODUCTION

The bankruptcy court applied issue preclusion to a state court judgment against the debtor, which was based on allegations of an "intentional assault," and determined that the resultant $29,000 debt was a nondischargeable "willful and malicious injury," pursuant to § 523(a)(6).[3] The debtor has appealed and maintains that the issue of subjective intent was not litigated in the state court action.

By focusing on the elements of common law assault, Debtor has overlooked the factual allegations which clearly established an assault and battery. Because such a tort under Washington law required proof of a defendant's subjective intent to injure, we AFFIRM.

## FACTS

Leonard Greger ("Debtor") filed a voluntary chapter 7 petition on June 7, 2004. Forrest Holliday ("Holliday") filed a timely complaint ("§ 523 Complaint") to except from discharge his judgment in the principal amount of $29,630.07.

---

[3] Section 523(a)(6) provides that a discharge under § 727 "does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

Unless otherwise indicated, all section, chapter, and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, as promulgated before its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005).

-2-

Prepetition, Holliday had initiated a lawsuit against Debtor in Washington state court entitled "Complaint for Personal Injuries" ("State Court Complaint"). It alleged, in pertinent part:

> 2.1 On December 3, 2002, plaintiff FORREST HOLLIDAY traveled to . . . . Spokane, Washington for the purpose of making contact with homeowner, defendant LEONARD R. GREGER . . . . Plaintiff arrived at the defendant's residence at approximately 10:00 a.m. and noticed the defendant standing on his front patio. After exiting his vehicle, plaintiff met the disgruntled defendant in the front yard and introduced himself. After a short introduction, the defendant began yelling obscenities and took hold of plaintiff's shoulder and started shaking him. Defendant then pushed the plaintiff toward his vehicle and slammed him into the driver's side door. The aforementioned acts of defendant caused plaintiff to sustain injury.
>
> 3.1 Plaintiff FORREST HOLLIDAY'S injuries and damages as hereinafter alleged were the direct and proximate result of defendant LEONARD R. GREGER'S intention to cause harmful or offensive contact with the plaintiff, constituting intentional assault on his person.
>
> 4.1 As the direct and proximate result of the occurrence, plaintiff FORREST HOLLIDAY has sustained injury, including but not limited to, physical and emotional injury, past and future pain and suffering, loss of enjoyment of life, economic loss in the form of past and future medical bills and associated expenses, lost wages, loss of earning capacity and permanent partial disability, all in an amount to be proven at trial.

State Court Complaint (July 17, 2003).

Following a bench trial, at which Debtor appeared *pro se* and testified on his own behalf, the state court entered a $29,630.07 money judgment ("Judgment") in Holliday's favor. The state court did not issue any separate findings or conclusions of law.

In bankruptcy court, Holliday attached the State Court Complaint and Judgment to his § 523 Complaint, wherein he repeated

-3-

the same basic allegations. Specifically, Holliday alleged:

> 5. On December 3, 2002, defendant committed the following intentional acts:
>
> With intent to cause harmful or offensive contact with the plaintiff, the defendant did willfully and intentionally take hold of the defendant's shoulder and started violently shaking him and slamming him into plaintiff's car door.
>
> 6. Plaintiff is informed and believes that defendant committed the intentional acts . . . , and that the defendant therefore intended to injure plaintiff.
>
> 7. As a result of defendant's intentional acts . . . , plaintiff suffered damages and loss . . . .

§ 523 Complaint (Sept. 17, 2004).

Debtor answered the § 523 Complaint and generally denied the allegations. He did not plead any affirmative defenses.

A trial went forward on June 30, 2005; both parties appeared, with Debtor appearing *pro se*.

Holliday's attorney stated that his evidence consisted of the State Court Complaint and Judgment. Holliday's attorney argued that the Judgment established that the debt was for an intentional tort and asked the bankruptcy court to apply the doctrine of preclusion to find it nondischargeable under § 523(a)(6) as a debt for a "willful and malicious injury."[4]

Debtor testified and maintained his innocence, denying that the assault and battery upon Holliday ever occurred and explaining Holliday's injury as "preexisting." Tr. of Proceedings (June 30, 2005) at 19:16. He stated that he could not afford to properly

---

[4] Holliday also took the stand, but only to authenticate the State Court Complaint and Judgment. On cross-examination, he testified that he had been unable to attend the state court trial "due to the injury I had received from the assault." Tr. of Proceedings (June 30, 2005), at 17:7-9. The bankruptcy court did not rely on this evidence in making her ruling, however.

-4-

defend himself and he had been "terrorized" by Holliday. Id. at 20:1. Nonetheless, he admitted that he had appeared and testified in the state court trial.

The bankruptcy court then explained that a "willful and malicious injury . . . really means . . . intentional tort," and that its job was "only to look at what the state court did and say, did the state court in fact determine that . . . there was liability for an intentional tort and that there were damages?" Id. at 24:11-12; 17-20.

Next, the court applied the elements of issue preclusion. It looked to the allegations of the State Court Complaint in order to determine that the nature of the litigation and the subsequent Judgment was for an intentional assault tort "to cause harmful or otherwise offensive contact with the plaintiff." See Tr. of Proceedings (June 30, 2005), at 25:14-22. The court concluded that the evidence established the elements of nondischargeability of the Judgment debt under § 523(a)(6).

A judgment in accordance with its ruling was entered on June 30, 2005. The court then granted Debtor's motion for an extension of time in which to file an appeal, and Debtor, now with counsel, filed a timely notice of appeal.

## ISSUE

The sole issue is whether the bankruptcy court erred in applying issue preclusion to the Judgment in order to determine that the debt was nondischargeable.

04-00221-PCW    Doc 41    Filed 09/01/06    Entered 09/14/06 14:24:15    Pg 5 of 18

## STANDARD OF REVIEW

The availability of issue preclusion is reviewed <u>de novo</u> as a mixed question of law and fact in which legal questions predominate. <u>Moncur v. Agricredit Acceptance Co. (In re Moncur)</u>, 328 B.R. 183, 186 (9th Cir. BAP 2005). The decision whether a claim is dischargeable also presents mixed issues of law and fact, which we review <u>de novo</u>. <u>Diamond v. Kolcum (In re Diamond)</u>, 285 F.3d 822, 826 (9th Cir. 2002).

## DISCUSSION

Section 523(a)(6) provides, "(a) A discharge under . . . this title does not discharge an individual debtor from any debt-. . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Holliday had to prove by a preponderance of the evidence that Debtor's actions were "willful and malicious." <u>Grogan v. Garner</u>, 498 U.S. 279, 291 (1991).

The bankruptcy court applied the doctrine of issue preclusion and concluded that the state court had already determined that Debtor's conduct was willful. Issue preclusion principles apply in discharge exception proceedings pursuant to § 523(a). <u>Grogan</u>, 498 U.S. at 284 & n.11.[5]

---

[5] However, a preexisting judgment does not have "claim" preclusive effect on the bankruptcy court's determination of dischargeability. <u>Sasson v. Sokoloff (In re Sasson)</u>, 424 F.3d 864, 873 (9th Cir. 2005); <u>Brown v. Felsen</u>, 442 U.S. 127, 138-39 & n.10 (1979).

-6-

04-00221-PCW    Doc 41    Filed 09/01/06    Entered 09/14/06 14:24:15    Pg 6 of 18

Issue preclusion prevents the relitigation of factual and legal issues already determined by other courts. Gayden v. Nourbakhsh (In re Nourbakhsh), 67 F.3d 798, 801 (9th Cir. 1995). Our circuit has held that "[t]he full faith and credit requirement of § 1738 compels a bankruptcy court in a § 523(a)(2)(A) nondischargeability proceeding to give collateral estoppel [issue preclusive] effect to a prior state court judgment." Id. This means, in the bankruptcy discharge context, that "[i]f, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of [§ 523], then collateral estoppel [issue preclusion], in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court." Brown, 442 U.S. at 139 n.10. See also Sasson, 424 F.3d at 872.

In determining whether a party should be precluded from relitigating an issue decided in a prior state court action, the bankruptcy court must look to that state's law of issue preclusion. Diamond, 285 F.3d at 826 (citing Nourbakhsh, 67 F.3d at 800). Under Washington law, a party can invoke issue preclusion by demonstrating the following elements: "(1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied." Diamond, 285 F.3d at 826 (citing Reninger v. State Dep't of Corr., 134 Wash. 2d 437, 449, 951 P.2d 782, 788 (1998)). The party asserting the doctrine has the burden of proving these elements. Nielson v. Spanaway Gen. Med. Clinic,

-7-

04-00221-PCW    Doc 41    Filed 09/01/06    Entered 09/14/06 14:24:15    Pg 7 of 18

135 Wash. 2d 255, 262-63, 956 P.2d 312, 316 (1998) (en banc). The Washington Supreme Court regards its preclusion doctrine as consistent with the Restatement (Second) of Judgments. E.g., id., 135 Wash. 2d at 262, 956 P.2d at 315.

Elements two through four having been met,[6] Debtor's arguments on appeal challenge only the first element--whether the state court adjudicated facts proving the identical "willful and malicious" elements § 523(a)(6).

The determination of a "willful and malicious" injury requires a two-step analysis. Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 831 (9th Cir. BAP 2006). The first step of the § 523(a)(6) inquiry is whether there was a "willful" injury, which "triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts." Kawaauhau v. Geiger, 523 U.S. 57, 61-62 (1998). A willful injury is deliberate, and it is "one which, in fact, targets a particular individual for harm and in so doing, injures him." Blandino v. Bradshaw (In re Bradshaw), 315 B.R. 875, 886 (Bankr. D. Nev. 2004). Thus, the willfulness test is subjective: "[Section] 523(a)(6)'s willful injury requirement is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his

---

[6] The state court Judgment was final and Debtor was a party to that action. Although Debtor maintains that he is innocent of assault and battery, he has not seriously argued that he was denied a full and fair trial, considering that he testified on his own behalf. Therefore, there are no grounds for a defense against the fourth element of issue preclusion--whether application of the doctrine would work an injustice. Nielson, 135 Wash. 2d at 265 (focusing on "whether the parties to the earlier adjudication were afforded a full and fair opportunity to litigate their claim in a neutral forum.")

own conduct." Carrillo v. Su (In re Su), 290 F.3d 1140, 1142 (9th Cir. 2002).

The second step of the § 523(a)(6) inquiry is whether appellant's conduct was "malicious." Khalign, 338 B.R. at 831. The relevant test for "malicious" conduct is: (1) a wrongful act; (2) done intentionally; (3) which necessarily causes injury; and (4) which is done without just cause and excuse. Jett v. Sicroff (In re Sicroff), 401 F.3d 1101, 1106 (9th Cir. 2005) (as amended). It can be inferred that a "willful" injury meets these requirements; in particular, "evidence in the record of specific intent to injure" negates just cause or excuse. Khalign, 338 B.R. at 831.

Debtor maintains that Holliday could not prove that the identical issues were litigated in state court because the state court did not issue any findings of intent or actual injury, and a judgment based on "intentional assault" requires neither subjective intent nor resultant injury, under Washington law.

Only the State Court Complaint and Judgment were before the bankruptcy court. The state court did not enter any formal findings of fact, nor did the Judgment contain any factual findings. Nor did the record before the bankruptcy court include a transcript of the state court proceedings to enable the court to discern any oral findings. To the extent Debtor is asserting that the bankruptcy court erred in considering this evidence, we do not find error.

Washington Superior Court Civil Rule ("CR") 52(a)(1) requires, with some exceptions, that "[i]n all actions tried upon the facts without a jury . . . the court shall find the facts

04-00221-PCW    Doc 41    Filed 09/01/06    Entered 09/14/06 14:24:15    Pg 9 of 18

specially and state separately its conclusions of law. . . ." CR 52(a)(4) provides that formal findings of fact and conclusions of law may be included in a written opinion or memorandum of decision. Such findings are binding on an appellate court if they are supported by substantial evidence. Flannery v. Bishop, 81 Wash. 2d 696, 699, 504 P.2d 778, 780 (1973).

CR 52(a) is similar to Federal Rule of Civil Procedure ("FRCP") 52(a). In addition to aiding the appellate court by affording it a clear understanding of the basis for the trial court's decision, another purpose of FRCP 52(a) is to make definite precisely what is being decided by the case in order to apply the preclusion doctrines. See Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. 2d § 2571 (Thompson/West 2006).

CR 52(d) provides that "[a] judgment entered in a case tried to the court where findings are required, without findings of fact having been made, is subject to a motion to vacate within the time for the taking of an appeal. . . ." In addition, the Revised Code of Washington ("RCW") provides that "[t]he finding of the court upon the facts shall be deemed a verdict, and may be set aside in the same manner and for the same reason as far as applicable, and a new trial granted." RCW 4.44.060.

Here, Debtor did not move to vacate the Judgment for a CR 52(a) violation. Therefore, he waived any alleged error based on a lack of written factual findings. See Lambert v. Lambert, 66 Wash. 2d 503, 508, 403 P.2d 664, 667 (1965).

Even in the absence of any written factual findings, Washington courts will review a trial court's judgment if there is no doubt about the questions it decided in the case and the theory

-10-

04-00221-PCW    Doc 41    Filed 09/01/06    Entered 09/14/06 14:24:15    Pg 10 of 18

upon which it was decided. <u>Backlund v. Univ. of Wash.</u>, 137 Wash. 2d 651, 657 n.1, 975 P.2d 950, 954 n.1 (1999). Usually, this is determined by looking to the memorandum decision or oral rulings. <u>Id.</u> However, case law holds that, even in the absence of a memorandum decision or oral rulings, the allegations of a complaint that fully support the judgment are deemed established. <u>Grant v. Pac. Gamble Robinson Co.</u>, 22 Wash. 2d 65, 66, 154 P.2d 301, 302 (1945); <u>O'Neal Land Co. v. Judge</u>, 196 Wash. 224, 226, 82 P.2d 535, 536 (1938); <u>Giles v. Giles</u>, 187 Wash. 599, 603, 60 P.2d 707, 709 (1936). These opinions do not expressly limit their holdings to a review of only legal issues on undisputed facts. In fact, Debtor concedes that under Washington law, "when there are no findings of fact issued by the lower court in support of its decision, a reviewing court assumes that the allegations in the complaint were established." Opening Brief (Jan. 17. 2006), at 9.

Therefore, we hold that it was proper for the bankruptcy court to look to the State Court Complaint and Judgment in order to determine whether the identical factual issues had already been resolved.

The gravamen of Debtor's appeal is that the Judgment was one for common law assault or intentional assault and that such cause of action requires neither specific intent to cause harm nor a resultant injury. Therefore, he maintains that there was insufficient proof of "willfulness" under § 523(a)(6).

Debtor is correct that at least one form of common law

04-00221-PCW    Doc 41    Filed 09/01/06    Entered 09/14/06 14:24:15    Pg 11 of 18

assault does not require specific intent.[7] Nonetheless, his argument is off the mark because the State Court Complaint alleged an "intentional assault on his [Holliday's] person." Washington's common law recognizes three definitions of assault:

    (1)    an attempt, with unlawful force, to inflict bodily injury upon another [attempted battery];

    (2)    an unlawful touching with criminal intent [actual battery]; and

    (3)    putting another in apprehension of harm whether or not the actor intends to inflict or is capable of inflicting that harm [common law assault].

Wilson, 125 Wash. 2d at 218, 883 P.2d at 323 (alterations in original).

The allegations of Holliday's State Court Complaint clearly pleaded a cause of action for all three forms of assault and battery. Holliday's State Court Complaint alleged (emphasis added):

    2.1    On December 3, 2002, plaintiff FORREST HOLLIDAY traveled to . . . Spokane, Washington for the purpose

---

[7] Washington case law is inconsistent on whether the tort of intentional assault requires specific intent to harm. The case cited by Debtor says that it does not. See State v. Byrd, 125 Wash. 2d 707, 712-13, 887 P.2d 396, 399 (1995) (citing Howell v. Winters, 58 Wash. 436, 438, 108 P. 1077, 1078 (1910)). Accord, State v. Wilson, 125 Wash. 2d 212, 217-18, 883 P.2d 320, 323 (1994). But see Brower v. Ackerley, 88 Wash. App. 87, 92-93, 943 P.2d 1141, 1144-45 (1997), which explains that the discussion of assault in Howell "accords with the Restatement (Second) of Torts § 21 (1965), which defines assault, in relevant part, as follows: '(1) An actor is subject to liability to another for assault if <u>(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact</u>, and (b) the other is thereby put in such imminent apprehension.'" (Emphasis added.) Therefore, another definition of common law assault may require proof that: "An act is done with the intention of putting the other in apprehension of an immediate harmful or offensive contact if it is done for the purpose of causing such an apprehension or with knowledge that, to a substantial certainty, such apprehension will result." Id., cmt. d.

of making contact with homeowner, defendant LEONARD R. GREGER . . . . Plaintiff arrived at the defendant's residence at approximately 10:00 a.m. and noticed the defendant standing on his front patio. After exiting his vehicle, plaintiff met the disgruntled defendant in the front yard and introduced himself. After a short introduction, the defendant began yelling obscenities and <u>took hold of plaintiff's shoulder and started shaking him. Defendant then pushed the plaintiff toward his vehicle and slammed him into the driver's side door.</u> The aforementioned acts of defendant caused plaintiff to sustain injury.

    3.1  Plaintiff FORREST HOLLIDAY'S injuries and damages as hereinafter alleged were the direct and proximate result of defendant LEONARD R. GREGER'S <u>intention to cause harmful or offensive contact with the plaintiff, constituting intentional assault on his person</u>.

A common law "battery" is an intentional tort defined as a "harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or a third person to suffer such a contact, or apprehension that such a contact is imminent." <u>McKinney v. City of Tukwila</u>, 103 Wash. App. 391, 408, 13 P.3d 631, 641, (2000); <u>Bundrick v. Stewart</u>, 128 Wash. App. 11, 18, 114 P.3d 1204, 1208 (2005). This definition is in accord with the <u>Restatement (Second) of Torts</u> § 18 (1965) which defines battery as follows:

    (1)  An actor is subject to liability to another for battery if

        (a)  he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

        (b)  an offensive contact with the person of the other directly or indirectly results.

    (2)  An act which is not done with the intention stated in Subsection (1, a) does not make the actor liable to the other for a mere offensive contact with the other's person although the act involves an unreasonable risk of inflicting it and, therefore,

-13-

would be negligent or reckless if the risk threatened bodily harm.

The facts relied upon by the state court were that Debtor committed an intentional assault which led to a battery. See also McKinney, 103 Wash. App. at 408 (quoting W. Page Keeton et al., Prosser and Keeton on Torts § 9, at 39 (5th ed. 1984)). Without using the word "battery," the bankruptcy court properly made a completely logical inference that a battery occurred from the facts of the intentional assault.

Such an assault and battery established the requisite subjective intent. Washington law incorporates the Restatement definition of intent for a battery. See Bradley v. Am. Smelting & Refining Co., 104 Wash. 2d 677, 682, 709 P.2d 782, 785 (1985), adopting Restatement (Second) of Torts § 8A (1965), which states:

> The word "intent" is used throughout the Restatement of this Subject to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.

Importantly, in Washington, a battery requires the specific intent to injure or the knowledge of a substantial certainty of harm. "[T]he act must be done for the purpose of causing the contact or apprehension or with knowledge on the part of the actor that such contact or apprehension is substantially certain to be produced." Garratt v. Dailey, 46 Wash. 2d 197, 201, 279 P.2d 1091, 1093 (1955) (quoting Restatement (First) of Torts, 29, § 13, cmt. on clause (a) (1934)). See also Restatement (Second) of Torts § 8A (Intent) (1965).

In the seminal substantial certainty case of Garratt, a five-year old boy was visiting his aunt at a backyard gathering. As

-14-

his aunt was beginning to sit down on a lawn chair, the boy withdrew the chair, the aunt fell and sustained a fractured hip and other serious injuries.  She sued the boy for battery.  In the first trial, the state court dismissed the action finding that the boy had no purpose of causing injury.  On appeal, the state supreme court then remanded the case for clarification on the issue of subjective intent.  It stated that the test was whether the boy, when he moved the chair, "knew with substantial certainty that the plaintiff would attempt to sit down where the chair had been."  Id., 46 Wash. 2d at 202.  If the boy had such knowledge, a battery would have been established, the supreme court held.  Id.[8]

Thus, the intent requirement is identical for a battery under Washington law and a "willful" injury under § 523(a)(6).  See Su, 290 F.3d at 1142.

Here, the allegations leave nothing to the imagination, nor do they cast doubt as to the theory upon which the state court based its decision.  Debtor purposefully grabbed Holliday, shook

---

[8] The proposed Restatement (Third) Torts Physical Harm § 1 (Intent), Reporters' Note cmt. b (2005), states that the dual definition of intentional tort--as purpose and knowledge--was not very well illustrated on Garratt's facts:

> Yet on the case's facts, the distinction between the presence of substantially certain knowledge and the absence of purpose is unpersuasive.  If five-year-old Brian removed the chair knowing with certainty that his aunt would fall, he almost certainly did this as a form of prank. But to size this up as a prank is to acknowledge that Brian wanted his aunt to hurt herself, if only slightly--or at least that he wanted to embarrass or offend her.  Moreover, so long as a defendant harbors such a purpose to hurt or offend, appropriate doctrines of proximate cause expose that defendant to liability for the full harm that ensues, even though that harm is more severe than what the defendant expects. . . .  On balance, then, Garratt v. Dailey is an unsatisfying example of § 8A in operation.

-15-

04-00221-PCW    Doc 41    Filed 09/01/06    Entered 09/14/06 14:24:15    Pg 15 of 18

him, and slammed him against a car. Debtor acted with either intent to injure, or with the substantial certainty that his acts would harm Holliday. Furthermore, neither the allegations nor the Judgment based thereon raise any doubt as to whether the acts were due to Debtor's negligence or recklessness, rather than an intentional tort. See Geiger, 523 U.S. at 61-62; Honegger v. Yoke's Wash. Foods, Inc., 83 Wash. App. 293, 298-99, 921 P.2d 1080, 1083 (1996) (personal injury case where basis of damage award could have been due to claims for negligence or assault and battery). We hold, therefore, that the requisite intent was established by the Judgment for assault and battery.

## CONCLUSION

The bankruptcy court properly applied issue preclusion to the state court Judgment in order to determine that a "willful and malicious" injury had been established from the allegations of assault and battery. The bankruptcy court's judgment of nondischargeability pursuant to § 523(a)(6) is therefore **AFFIRMED.**

04-00221-PCW    Doc 41    Filed 09/01/06    Entered 09/14/06 14:24:15    Pg 16 of 18

U.S. Bankruptcy Appellate Panel
of the Ninth Circuit
125 South Grand Avenue, Pasadena, California 91105
Appeals from Central California  (626) 229-7220
Appeals from all other Districts (626) 229-7225

NOTICE OF ENTRY OF JUDGMENT

BAP No. EW-05-1379-MaHK

RE: LEONARD R. GREGER

A separate Judgment was entered in this case on September 1, 2006.

BILL OF COSTS:

Bankruptcy Rule 8014 provides that costs on appeal shall be taxed by the Clerk of the Bankruptcy Court. Cost bills should be filed with the Clerk of the Bankruptcy Court from which the appeal was taken.
9th Cir. BAP Rule 8014-1

ISSUANCE OF THE MANDATE:

The mandate, a certified copy of the judgment sent to the Clerk of the Bankruptcy Court from which the appeal was taken, will be issued 7 days after the expiration of the time for filing a petition for rehearing unless such a petition is filed or the time is shortened or enlarged by order. See Federal Rule of Appellate Procedure 41.

APPEAL TO COURT OF APPEALS:

An appeal to the Ninth Circuit Court of Appeals is initiated by filing a notice of appeal with the Clerk of this Panel. The Notice of Appeal should be accompanied by payment of the $255 filing fee (effective November 1, 2003) and a copy of the order or decision on appeal. Checks may be made payable to the U.S. Court of Appeals for the Ninth Circuit. See Federal Rules of Appellate Procedure 6 and the corresponding Rules of the United States Court of Appeals for the Ninth Circuit for specific time requirements.

CERTIFICATE OF MAILING
----------------------------------------
    The undersigned, deputy clerk of the U.S. Bankruptcy
Appellate Panel of the Ninth Circuit, hereby certifies that a copy
of the document on which this certificate appears was mailed this date
to all parties of record to this appeal.

                        By: Patti Ippolito

                        Deputy Clerk: September 1, 2006